UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| DELFINO M. ALEMAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:12-CV-270 |
| | § | |
| EDCOUCH ELSA INDEPENDENT | § | |
| SCHOOL DISTRICT, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING ALL DEFENDANTS' PARTIAL MOTIONS TO DISMISS AND PARTIAL MOTIONS FOR SUMMARY JUDGMENT AND AFFIRMING COMMISSIONER'S DECISION, AND GRANTING ISD DEFENDANTS' MOTION TO STRIKE**

**I.    Factual and Procedural Background**

Now before the Court is the "Partial 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction and Partial 12(b)(6) Motion to Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted" (Dkt. No. 31) filed by Defendants Edcouch-Elsa Independent School District ("ISD") and Juan Jose Ybarra, Richard Ozuna, Norfilia Gonzalez, Domingo Rodriguez, and Joseph Campos, sued individually and in their official capacities as members of the ISD Board of Trustees (collectively, "ISD Defendants"); the "Partial Motion for Summary Judgment" (Dkt. No. 32) filed by the ISD Defendants; the "Partial Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" (Dkt. No. 34) filed by Defendant Michael Williams sued in his official capacity as Commissioner of the Texas Education Agency ("Commissioner");[1] and the "Motion to Strike Evidence" (Dkt. No. 45) filed by the ISD Defendants.

---

[1]  Williams was appointed Commissioner on September 1, 2012, and is therefore the proper party to this official-capacity suit.  (Dkt. No. 17 at ¶ 8; Dkt. No. 31 n.1).

Through this suit, Plaintiff Delfino M. Aleman challenges the ISD Board of Trustees' ("Board") termination of his employment as ISD Superintendent. Plaintiff originally filed suit in the 398th Judicial District Court, Hidalgo County, Texas on July 10, 2012. (Dkt. Nos. 1-1, 1-2). On August 15, 2012, the ISD properly removed the case from state court on the grounds that this Court has federal question and supplemental jurisdiction over his claims. (Dkt. No. 1); *see* 28 U.S.C. §§ 1331, 1343, 1367, 1441. Plaintiff's First Amended Original Complaint, his live pleading, alleges that he entered into a written agreement with the ISD to employ him in the position of Superintendent for a three-year term beginning July 1, 2011. (Dkt. No. 17 at ¶ 10). According to Plaintiff, his refusal to "play ball" with the Board when asked to hire unqualified individuals, circumvent Board policy and Texas Education Agency ("TEA") directives, and post meetings without advance warning quickly "earned him the ire" of Board President Campos. *Id.* at ¶¶ 11-12. On October 19, 2011, the ISD suspended Plaintiff with pay. *Id.* at ¶ 13. On December 2, 2011, "a letter of proposed termination was sent to Plaintiff setting out 27 distinct charges that the Board advised could constitute 'good cause' for his termination." *Id.* Pursuant to Plaintiff's timely request, a Certified Hearing Examiner ("CHE") was appointed to hear evidence on the proposed action. *Id.* at ¶¶ 13, 14. After presiding over an evidentiary hearing held from March 5 through March 7, 2012, the CHE recommended that only one and part of another of the 27 charges constituted good cause for Plaintiff's termination. *Id.* at ¶¶ 14, 16. These charges concerned comments made by Plaintiff to the media about his relationship with the Board. *Id.* at ¶ 17.

On April 5, 2012, the Board met to review the CHE's recommendation, entertained oral arguments, deliberated, and "ultimately took action." *Id.* at ¶ 18. The meeting was presided over by Campos, who according to Plaintiff was disqualified to be a Board member as he had moved

outside ISD boundaries.  *Id.* at ¶¶ 18, 21.  Plaintiff also alleges that no certified court reporter was present to transcribe the meeting, and that he received no written advisory of the action taken by the Board.  *Id.* at ¶¶ 19, 20.  Plaintiff appealed the termination of his contract to the Commissioner, who allegedly ignored the ISD's failure to timely file the CHE's recommendation and to file any transcript of the April 5, 2012 hearing, and upheld the termination.  *Id.* at ¶¶ 22-24.

Against the ISD Defendants only, Plaintiff asserts causes of action under 42 U.S.C. § 1983 for violations of his right to free speech under the First Amendment to the U.S. Constitution, and also alleges that he was deprived of his Fourteenth Amendment right "to just compensation for taking of property."  (Dkt. No. 17 at Counts I-III).  Also against the ISD Defendants, Plaintiff brings claims for conspiracy, violations of the Texas Open Meetings Act, and breach of contract.  *Id.* at Counts IV-VI.  Against all Defendants, Plaintiff brings a § 1983 cause of action for violation of his Fourteenth Amendment right to due process.  *Id.* at Counts I-II.[2]  Finally, he appeals the Commissioner's decision pursuant to § 21.307 of the Texas Education Code.  *Id.* at Count VII.

Through their Motions filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants seek dismissal of all claims other than Plaintiff's appeal of the Commissioner's decision.  (Dkt. Nos. 31, 34).  Through their Motions for Partial Summary Judgment, Defendants ask that the Court affirm that decision and enter summary judgment in their favor.  (Dkt. Nos. 32, 34).  The ISD Defendants also move to strike two exhibits attached to Plaintiff's response to their Motion for Partial Summary Judgment.  (Dkt. No. 45).  Upon consideration of the record, in light of the relevant law, the Court finds that all Motions must be

---

[2]  Plaintiff admits that his allegations concerning violations of his "civil rights" are restatements of his free speech, takings, and due process claims.  *See* (Dkt. No. 17 at Counts I, II; Dkt. No. 38).

granted and the Commissioner's decision affirmed for the following reasons.

## II.     ISD Defendants' Partial Motion to Dismiss

### A.     Standard of Review

#### 1.     Rule 12(b)(1)

A motion filed under Rule 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing FED. R. CIV. P. 12(b)(1)).  Lack of subject matter jurisdiction may be found on the basis of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Id.*  The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction.  *Id.*

#### 2.     Rule 12(b)(6)

A party may move to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677-68 (2009).  This standard does not require detailed factual allegations.  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  However, a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  To survive a Rule 12(b)(6) motion, the complaint and any other matters properly considered[3] must contain "sufficient factual matter,

---

[3]  "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial

accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 570).   A claim has facial plausibility when the pleaded factual

content allows the court, drawing upon its "judicial experience and common sense," to

reasonably infer that the defendant is liable for the misconduct alleged.   *Id.* at 678 (citing

*Twombly*, 550 U.S. at 556), 679.   "But where the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'"   *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

**B.     Analysis**

**1.     Due Process Claim**

**a.     Deprivation of Protected Interest**

Through Plaintiff's first and second causes of action, he claims that the ISD Defendants

deprived him of his federal constitutional right to procedural due process.   (Dkt. No. 17 at

Counts I, II).   The due process clause of the Fourteenth Amendment prohibits any State from

"depriv[ing] any person of life, liberty, or property, without due process of law."   U.S. CONST.

amend. XIV, § 1.   Thus, to state a due process claim under § 1983, "'a plaintiff must first

identify a protected life, liberty or property interest and then prove that governmental action

resulted in a deprivation of that interest.'"   *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)

(quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)).   Plaintiff's pleading alleges that

the ISD Defendants deprived him of a property interest in his three-year employment contract,

---

notice.'"   *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir.2008)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (court's review on 12(b)(6) motion "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").   To the extent necessary to resolve the Rule 12(b)(6) Motions before it, this Court may consider the "Recommendation of the Certified Hearing Examiner" and "Decision of the Commissioner" attached to Plaintiff's pleading.   (Dkt. No. 17, Exs. A, B).

and also appears to claim the deprivation of a liberty interest through damage to his reputation. (Dkt. No. 17 at ¶¶ 3, 38, 42).  The ISD Defendants concede that Plaintiff had a protected property interest in the economic benefits guaranteed by his employment contract during its three-year term, but dispute that Plaintiff had a property interest in any additional, noneconomic benefit of that contract.  (Dkt. No. 31).  The Fifth Circuit has directed that

> [w]hen a public employee has a legitimate entitlement to his employment, the due process clause may protect as 'property' no more than the status of being an employee of the governmental employer in question together with the economic fruits that accompany the position.  Although the governmental employer may specifically create a property interest in a noneconomic benefit—such as a particular work assignment—a property interest in employment generally does not create due process property protection for such benefits.

*Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 754 n.3 (5th Cir. 1986).  Plaintiff appeals to this language to argue that the ISD Defendants deprived him of the noneconomic benefit of a particular work assignment—that of Superintendent.  (Dkt. No. 38).  However, the Court cannot ignore the Fifth Circuit's holding in *Kinsey v. Salado Independent School District*, 950 F.2d 988 (5th Cir. 1992), consistent with its precedent, that the plaintiff lacked a constitutionally protected property interest in the noneconomic benefit of serving as an ISD Superintendent.  *Id.* at 997.  As in the present case, the plaintiff in *Kinsey* was employed under a contract with the ISD, but the court observed that he was "unable to cite to any provision of the Texas Education Code, or other source, which bestows a property interest in the *position* of superintendent."  *Id.* (emphasis in original).  Plaintiff has also failed to identify the source of a property interest in his particular position.  In *contrast* to *Kinsey*, where the court's holding was fatal to the plaintiff's due process claim since he had received full compensation under the contract and could not sue for the deprivation of an economic benefit, Plaintiff's termination deprived him of his contracted-for compensation and he may proceed with his due process claim on this basis.  *See id.*

"Protected liberty interests include the freedom to work and earn a living," and therefore such interests can be implicated where a plaintiff "was either: terminated for a reason which was (i) false, (ii), publicized, *and* (iii) stigmatizing to his standing or reputation in his community or…terminated for a reason that was (i) false *and* (ii) had a stigmatizing effect such that (iii) he was denied other employment opportunities as a result."  *Whiting v. Univ. of S. Miss.*, 451 F.3d 339 (5th Cir. 2006) (quoting *Cabrol v. Town of Youngsville*, 106 F.3d 101, 107 (5th Cir. 1997)) (emphasis added).  Either reason requires a showing of falsity.  Although Plaintiff's complaint alleges that the letter of proposed termination set out 27 charges that the Board advised could constitute good cause for his termination, and his response claims that many of these were false and stigmatizing, his pleading and the documents attached reveal that the actual bases for his termination were the one and a half charges concerning comments made by Plaintiff to the media about his relationship with the Board.  (Dkt. Nos. 17, 38; Dkt. No. 17, Exs. A, B).  Plaintiff does not contest that he made these comments, and has therefore failed to allege the "falsity" element required to implicate a liberty interest.  To the extent that the 27 charges themselves, rather than Plaintiff's termination, could constitute the challenged action, Plaintiff has failed to allege that the charges were publicized in such a manner as to stigmatize his reputation in the community, or that he has been denied other employment opportunities as a result.  The Court therefore concludes that Plaintiff has failed to identify a protected liberty interest of which the ISD Defendants' actions deprived him.

**b.     Process Due**

In sum, the only protected interest identified by Plaintiff is a property interest in his contracted-for employment and compensation.  Further, the deprivation of this interest, as it concerns the ISD Defendants, consists of the Board's decision to terminate Plaintiff's

employment.  The Court therefore turns to the final element necessary to sustain Plaintiff's due process claim, and which he allegedly has failed to plead in a manner sufficient to survive a Rule 12(b)(6) challenge: that the ISD Defendants terminated his employment without the process due.  *See Cleveland Bd. of Educ. v. Loudermill, et al.*, 470 U.S. 532, 541 (1985) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)) ("[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'").  An essential principle of due process is that the deprivation of a protected interest "'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).  Where, as here, a person with a property interest in his continued employment is given "a full administrative hearing and judicial review" following his termination, the pre-termination process due to him consists of "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Id.* at 545-46.  Though necessary, the pre-termination hearing "need not be elaborate"—something less than a full evidentiary hearing is generally sufficient.  *Id.* at 545.  It also need not definitively resolve the propriety of the discharge, but rather "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  *Id.* at 545-46.

    In contrast to *Loudermill*, *see id.* at 535, here the State has established a pre-termination procedure to be followed before an ISD may deprive a "teacher," statutorily defined to include a superintendent, of his continued employment.  *See* TEX. EDUC. CODE § 21.201(a).  Under Chapter 21 of the Texas Education Code, an ISD Board of Trustees may terminate a teacher's term contract and discharge him at any time for "good cause as determined by the board."  *Id.* §

21.211.  Prior to termination, however, the Board must give notice of its proposed decision to the teacher.  *See id.* §§ 21.251(a)(1), 2.153(a).  If the teacher desires a pre-termination hearing, he must request it from the Commissioner within 15 days of receiving notice of his proposed termination.  *Id.* § 21.253(a).[4]  Within 10 business days of receiving a timely request, the Commissioner must assign a Certified Hearing Examiner to conduct an evidentiary hearing.  *Id.* § 21.254(c); *see also* §§ 21.255, 21.256.  Not later than 60 days after receiving the request, the CHE "shall complete the hearing and make a written recommendation that: (1) includes proposed findings of fact and conclusions of law; and (2) may include a proposal for granting relief."  *Id.* § 21.257.  Within 20 days after receiving the recommendation and record of the CHE, the Board must hold a meeting at which it considers the recommendation and record and allows each party the opportunity to present oral argument.  *Id.* § 21.258.  Not later than 10 days after the meeting, the Board "shall announce a decision that: (1) includes findings of fact and conclusions of law; and (2) may include a grant of relief."  *Id.* § 21.259(a).  The Board may adopt, reject, or change the CHE's conclusions of law, including a determination of good cause, and any proposal for granting relief, and may reject or change a finding of fact not supported by substantial evidence.  *Id.* § 21.259(b).  The reason for any change to or rejection of the CHE's recommendation must be stated in writing.  *Id.* § 21.259(c), (d).

The pre-termination procedure afforded by the Education Code includes all of the requisites of due process: it requires that notice be given to the teacher of his proposed termination for good cause, gives him the opportunity to request a hearing at which he may obtain an explanation of the employer's evidence and present his side of the story, and gives him an additional opportunity to present his side to the Board upon its consideration of the CHE's

---

[4]  "Commissioner" refers to the Commissioner of Education and head of the TEA, the same official who is a party to this suit.  *See* TEX. EDUC. CODE §§ 7.002, 7.051, 7.055.

recommendation.  Plaintiff's pleaded allegations reveal that all this was provided to him: he received the letter setting forth the 27 charges that the Board advised could constitute good cause for his termination, requested and received an evidentiary hearing before the CHE who concluded that only one and a half of those charges constituted good cause, and admits that the Board met to review the CHE's recommendation, entertained oral arguments, deliberated, and "ultimately took action," *i.e.*, terminated his employment.   Still, Plaintiff alleges various deficiencies in the pre-termination process that he claims rise to the level of due process violations.  (Dkt. Nos. 1, 38).  The Court will address each in turn.

Plaintiff's pleading alleges that Board President Campos was disqualified from presiding over the April 5, 2012 meeting at which the Board considered the CHE's recommendation because Campos had moved outside ISD boundaries.   According to Plaintiff's response to the Motion, the Board's failure to disqualify Campos prior to the meeting rendered the hearing "procedurally inadequate."  (Dkt. No. 38).   The Court agrees with the ISD Defendants that Plaintiff's pleaded allegations fail to state a due process claim.  *See* (Dkt. No. 31).  Although the Texas Constitution provides that a Board member who ceases to reside in his district vacates his office, it allows him to continue to perform the duties of his office until his successor is duly qualified.  *See* Tex. Const. art. XVI, §§ 14, 17.  Plaintiff does not allege that at the time of the meeting, a successor was duly qualified to replace Campos, and even if he had made this allegation, the fact that Campos presided over the meeting did not deprive Plaintiff of the requisite oral or written notice of the charges against him, an explanation of the ISD's evidence, and an opportunity to present his side of the story.  The Court therefore finds that Campos's alleged disqualification from presiding over the April 5, 2012 meeting does not render Plaintiff's pre-termination hearing constitutionally infirm.

Plaintiff's pleading also complains that the ISD's failures to follow certain requirements imposed by the Texas Education and Administrative Codes, *i.e.*, its failures to have a certified court reporter present to transcribe the April 5, 2012 meeting, submit the transcript as part of the record on appeal, and timely file the CHE's recommendation with the record, deprived him of due process.  *See* TEX. EDUC. CODE §§ 21.260, 21.301; 19 TEX. ADMIN. CODE § 157.1072(e)(6)-(8).  Again, even assuming that the ISD failed to follow these requirements, the partial incompleteness and untimeliness of the appellate record did not deprive Plaintiff of the requisite pre-termination notice or the opportunity to be heard.  Plaintiff nonetheless appears to claim that that these failures so affected the Commissioner's *post*-termination administrative review of the Board's decision that they rendered the entirety of the procedure constitutionally inadequate.  *See id.*  Plaintiff's argument is better considered in the context of his due process claim against the Commissioner and his appeal of the Commissioner's decision; it evinces no due process violation on the part of the ISD Defendants.

Finally, to the extent that Plaintiff alleges that he was not advised in writing of what action the Board took at the April 5, 2012 meeting, this alleged failure does not state a due process claim against the ISD Defendants.  As noted *supra*, the Education Code requires that the Board "announce" its decision, and such announcement need only be in writing if the Board changes or rejects the recommendation made by the CHE.  Plaintiff does not allege that the Board failed to announce its decision or that it made changes to or rejected the CHE's recommendation, and even if it did, the lack of a written announcement did not deprive Plaintiff of the hallmarks of pre-termination due process: notice and a hearing.  Plaintiff also does not allege that the lack of a written decision affected his ability to obtain administrative review of the Board's termination decision.

For all of these reasons, the Court finds that Plaintiff's due process claim against the ISD Defendants does not withstand the Rule 12(b)(6) challenge, and must be dismissed.[5]

## 2.    Free Speech Claim

Plaintiff's first three causes of action set forth his claim that the ISD Defendants violated his right to free speech, as protected by the First Amendment, by terminating his employment on the bases of his comments to "news media outlets" regarding his relationship with the Board. (Dkt. No. 17 at Counts I-III).  In order to establish this claim under § 1983, Plaintiff must first show that: (1) the speech involves a matter of public concern; and (2) the interests of the employee, as a citizen, in commenting on matters of public concern outweigh the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.  *Coughlin v. Lee*, 946 F.2d 1152, 1156-57 (5th Cir. 1991) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).  "This determination is a question of law to be resolved by the court."  *Id.* at 156.

The ISD Defendants do not dispute that Plaintiff's pleading meets the first requirement; under *Kinsey*, *supra*, on which Defendants' Motion relies, Plaintiff's comments to the media implicate "the performance of elected officials" and therefore involve matters of public concern. *See* (Dkt. No. 31); *Kinsey*, 950 F.2d at 990-91, 995 (Texas ISD Superintendent's comments to public and in newspaper reflecting his support for reelection campaign of "slate" of current Board members with whom he was aligned, and his opposition to slate led by another current member, involved matters of public concern).  On the second requirement—whether Plaintiff's interest as a citizen in making these comments outweighed the ISD's interest in the efficient

---

[5]  The Court need not, therefore, consider the ISD Defendants' alternate arguments that this claim against the Defendant Board members in their official capacities is redundant of the claim against the Defendant ISD, and that the Board members sued in their individual capacities are entitled to qualified immunity. (Dkt. No. 38).

provision of its services to the public—the ISD Defendants' Motion argues that *Kinsey* foreclosures such a showing.  *See* (Dkt. No. 31).  Although Plaintiff points out that *Kinsey* differs from the present case in that it involved both speech and political association, the decision offers considerable guidance given that it applied a formulation of the *Pickering/Connick* balancing test also applicable here.  *See* (Dkt. No. 38).  That test requires consideration of such factors as: (1) the degree to which the speech involves matters of public concern; (2) the time, place, and manner of the speech; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's speech on those relationships; and (4) whether the employee's speech may be characterized as hostile, abusive, or insubordinate.  *See id.* at 994; *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 707 (5th Cir. 1998).  The *Kinsey* court also made the relevant observation that in cases "involving public employees who occupy policymaker or confidential positions," the State's interest more easily outweighs the employee's as a private citizen.  *Kinsey*, 950 F.2d at 994; *accord Brady*, 145 F.3d at 707-08.  As another Circuit succinctly stated, this is because "neither the Constitution nor the *Pickering* balancing test requires a public employer to entrust an adversary or critic with a sensitive, confidential or policy role."  *Kaluczky v. City of White Plains*, 57 F.3d 202, 210 (2d Cir. 1995).

In *Kinsey*, the Fifth Circuit acknowledged that the Superintendent's speech and association involved matters of "great" public concern, and that his conduct was not hostile, abusive, or insubordinate.  *Kinsey*, 950 F.2d at 996.  However, finding that Texas law gave the Superintendent a high-level, policymaking, and confidential position in relation to the Board, and therefore made a close working relationship with the Board essential, the court observed that "not much opposition [to the slate of Board candidates] was required in order to disrupt, and prevent, effective performance."  *Id.* at 995-96.  On the issue of the time, place, and manner of

the Superintendent's speech, the court observed that he made his position in the Board election well-known, leaving "no doubt" that he could not have an effective relationship with the Board as a result. *Id.* at 996. "In short, in light of his high-level policymaker position, [the Superintendent] stepped over the line" and "abandoned any shelter otherwise provided by the First Amendment." *Id.*

The CHE's recommendation attached to Plaintiff's pleading reveals that the comments to the media constituting the alleged good cause for Plaintiff's termination were made on three occasions, and that they were highly critical of the Board. (Dkt. No. 17, Ex. B at Findings of Fact Nos. 74-76, 78, 80, 83, 92, 117, 118). Plaintiff does not attempt to argue otherwise, but simply offers that he "had reason for [his] concerns." (Dkt. No. 38). Regardless of the merits of Plaintiff's concerns, precedent instructs that a Texas ISD does not violate the First Amendment by terminating the employment of its Superintendent, who as a matter of Texas law occupies a high-level policymaker and confidential position in relation to its Board of Trustees, if the Superintendent's speech as a citizen on matters of public concern disrupts the effectiveness of his working relationship with the Board. The only plausible conclusion from the pleaded and referenced facts is that Plaintiff's speech engendered this type of disruption, and therefore the Court finds that Plaintiff's free speech claim must be dismissed.[6]

### 3.    "Takings" Claim

Plaintiff's first cause of action claiming due process and free speech violations also complains of violations of his constitutional right "to just compensation for taking of property." (Dkt. No. 17 at ¶ 31; Dkt. No. 31). "The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, directs that private property shall not be taken for public use without just compensation." *Dennis Melancon, Inc. v. City of New*

---

[6] *Id.*

*Orleans*, 703 F.3d 262, 269 (5th Cir. 2012) (quoting *Urban Developers LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006)) (internal quotations omitted).  To the extent that Plaintiff attempts to bring a takings claim, the ISD Defendants move to dismiss it on various grounds. (Dkt. No. 31).  Plaintiff responds that he alleges no taking other than that effectuated by the Board's "false accusations in the termination proceedings," but the Court has located no precedent that would allow these facts to support a takings claim.  (Dkt. No. 38).  The Court therefore finds that this claim is subject to dismissal.[7]

**4.      Conspiracy Claim**

Plaintiff's fourth cause of action, labeled "conspiracy," alleges that the ISD Defendants and their attorney, the current Superintendent, conspired to deprive Plaintiff of his due process and free speech rights.  (Dkt. No. 17 at Count IV).  The ISD Defendants construe this cause of action as a claim for civil conspiracy under Texas common law, and move to dismiss it under Rule 12(b)(6) on the ground that Plaintiff has failed to allege the requisite, underlying tort.  (Dkt. No. 31).  In the alternative, the ISD Defendants ask for dismissal under Rule 12(b)(1) on the basis of Defendants' sovereign and/or statutory immunity from suit.  *Id.*  The Court need not address these arguments, as Plaintiff's response clarifies that he "has not alleged any tort claims."  (Dkt. No. 38).  To the extent that Plaintiff is attempting to assert a claim under 42 U.S.C. § 1985(3) for conspiracy to violate his constitutional rights, that claim requires a showing of "some racial, or…class-based, invidiously discriminatory animus behind the conspirator[s'] action.'"  *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Plaintiff's pleading and response fail to identify the requisite "class-based" animus, and therefore Plaintiff cannot proceed on any such claim.

---

[7] *Id.*

5.      **Claim for Violations of Texas Open Meetings Act**

Plaintiff's fifth cause of action appears to allege that the ISD Board violated the Texas Open Meetings Act ("TOMA") by holding three "illegal" meetings. (Dkt. No. 17 at Count V). The Board allegedly held the first meeting "for the purpose of pressuring Plaintiff into hiring a certain individual who was not qualified," although Plaintiff admits that he refused to participate in the meeting and did not hire the individual. *Id.* The second meeting was held "to discuss [Plaintiff's] suspension and ultimately his proposed termination," and the third was the April 5, 2012 meeting at which the Board considered the CHE's recommendation while "knowing that [Campos] was illegally holding his position on the board as he was no longer a resident of the district." *Id.* Plaintiff cites to the section of TOMA providing that "[a]n action taken by a governmental body in violation of this chapter is voidable," TEX. GOV'T. CODE § 551.141, but the Court agrees with the ISD Defendants that Plaintiff's allegations either fail to identify a voidable "action" taken by the Board or fail to identify a TOMA provision that was violated. *See* (Dkt. No. 31). Therefore, Plaintiff cannot state a claim for which relief can be granted under TOMA.[8]

6.      **Breach of Contract**

Plaintiff's sixth cause of action alleges that the ISD breached its contract with Plaintiff by terminating his employment in violation of his due process and free speech rights. (Dkt. No. 17 at Count VI). The ISD Defendants move to dismiss this claim on the grounds that it is duplicative of his due process and free speech claims and his administrative appeal of the Commissioner's decision, the latter of which constitutes Plaintiff's exclusive remedy for

---

[8]  Plaintiff's response appears to concede this, as he contends that he has included the TOMA allegations not for the purpose of requesting separate relief, but to establish that the individual Defendants' "course of conduct" included knowing violations of the law. *See* (Dkt. No. 38).

challenging the ISD's termination of his contract.  (Dkt. No. 38); *see O'Neal v. Ector Cnty. Consol. Indep. Sch. Dist.*, 251 S.W.3d 50, 51 (Tex. 2008) (where administrative challenge to termination of teacher contract provides same relief as action for breach of that contract, latter is "neither necessary nor permissible").  As Plaintiff's response concedes that he is seeking administrative review of the Commissioner's decision upholding the termination of his contract, any independent claim for breach of the same contract must be dismissed.

## C.     Conclusion

For the foregoing reasons, the Court finds that the ISD Defendants' Partial Motion to Dismiss Plaintiff's due process, free speech, takings, conspiracy, TOMA, and breach of contract causes of action against them must be granted.

## III.     ISD Defendants' Partial Motion for Summary Judgment

## A.     Overview of Parties' Contentions

In his final cause of action, Plaintiff alleges that the Commissioner's decision to uphold the Board's termination decision is "not supported by susbstantial evidence and/or the conclusions of law are erroneous," and that the Board's and/or the Commissioner's "procedural irregularities" rendered the decision erroneous.  (Dkt. No. 17 at Count VII).  These allegations constitute an appeal of the Commissioner's decision under § 21.307, which directs that the Defendant ISD is a necessary party.  *See* (Dkt. No. 32); TEX. EDUC. CODE § 21.307(c).  As the Court may not take evidence outside the administrative record to resolve this appeal, *see id.* § 21.307(e), the ISD Defendants move for summary judgment in the ISD's favor based on that record.  (Dkt. No. 32); *see* FED. R. CIV. P. 56(a) (district court shall grant summary judgment when there is no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law).  According to the ISD Defendants, the record establishes that the Commissioner's

decision is supported by substantial evidence and evinces no error of law or procedural irregularity warranting reversal.  (Dkt. No. 32).

**B.      § 21.307 Standard of Review**

In a § 21.307 appeal, the reviewing court is guided by the following requirements:

(e) The court shall, under the substantial evidence rule, review the evidence on the evidentiary record made at the local level and any evidence taken by the commissioner but may not take additional evidence.

(f) The court may not reverse the decision of the commissioner unless the decision was not supported by substantial evidence or unless the commissioner's conclusions of law are erroneous.

(g) The court may not reverse a decision of the commissioner based on a procedural irregularity or error by a hearing examiner, a board of trustees or board subcommittee, or the commissioner unless the court determines that the irregularity or error was likely to have led to an erroneous decision by the commissioner.

TEX. EDUC. CODE § 21.307(e)-(g).

Plaintiff has the burden to demonstrate that the Commissioner's decision was not supported by "substantial evidence."  *E.g.*, *Matthews v. Scott*, 268 S.W.3d 162, 172 (Tex.App.-Corpus Christi 2008, no pet.).  "'Substantial evidence means more than a mere scintilla; thus, the evidence may preponderate against the agency's decision, yet still amount to substantial evidence.'"  *Id.* (quoting *Miller v. Houston Indep. Sch. Dist.*, 51 S.W.3d 676, 680 (Tex.App.-Houston [1st Dist.] 2001, pet. denied)).  "To uphold the Commissioner's decision, [courts] must merely find that reasonable minds could have reached the same conclusion as the Commissioner."  *Id.*

When the Commissioner's conclusions of law construe a statute for which the TEA is charged with enforcement, the court "must give serious consideration to that construction, 'so long as the construction is reasonable and does not contradict the plain language of the statute.'" *Id.* (quoting *Miller*, 51 S.W.3d at 680–81).  "Although the Texas Education Code's employment

provisions are remedial and should be construed broadly, '[courts] are not inclined to reverse the Commissioner's reasonable determination in an area where he [or she] possesses considerable authority and expertise.'" *Id.* (quoting same).

**C.     Analysis**

**1.     Plaintiff's "Substantial Evidence" Challenge to Commissioner's "Good Cause" Determination**

Texas case law directs that "good cause" for the Board's termination of a teacher's term contract is "'the employee's failure to perform the duties in the scope of employment that a person of ordinary prudence would have done under the same or similar circumstances.'" *See* TEX. EDUC. CODE § 21.211(a)(1); *Tave v. Alanis*, 109 S.W.3d 890, 893 (Tex.App.-Dallas 2003, no pet.) (quoting *Lee-Wright, Inc. v. Hall*, 840 S.W.2d 572, 580 (Tex.App.-Houston [1st Dist.] 1992, no writ)). "'An employee's act constitutes good cause for discharge if it is inconsistent with the continued existence of the employer-employee relationship.'" *Tave*, 109 S.W.3d at 893 (quoting same).

As reflected by Plaintiff's pleading and the "Recommendation of the Certified Hearing Examiner" and "Decision of the Commissioner" attached to that pleading and to the ISD Defendants' Motion for Partial Summary Judgment, Plaintiff's comments to the media about his relationship with the Board constituted the bases for the CHE's finding of good cause for Plaintiff's termination, which finding was adopted by the Board and upheld by the Commissioner. *See* (Dkt. No. 17; Dkt. No. 17, Exs. A, B; Dkt. No. 32, Exs. A1, A2).[9] Plaintiff does not dispute the CHE's factual findings that he made these comments to a local newspaper and television station on three occasions in mid-October 2011, and that they included his calling

---

[9]  Plaintiff challenges the lack of a certified record of the meeting at which the Board considered the CHE's recommendation, but stops short of alleging that the Board did not adopt that recommendation. *See* (Dkt. Nos. 43, 48).

the Board "dysfunctional," "reactionary," "underhanded," and "micro manager types," and
opining that he "despises the exploitation" of children but that "a few rouge board members
insist on running business as usual." (Dkt. No. 32, Ex. A1 at Findings of Fact Nos. 74-76, 78,
80, 92; Dkt. No. 43). The CHE made the additional factual findings that these comments
supported one and a half of the 27 good cause charges contained in the Board's proposed letter
of termination: namely, the charges of "failure to maintain a positive and professional working
relationship with the Board by publicly disparaging the Board to the media" and "failure to
maintain a positive and professional working relationship with the Board by failing to articulate
and support Board policy and decisions to…[the] community." (Dkt. No. 32, Ex. A1 at Findings
of Fact Nos. 117-18; Dkt. No. 43, Ex. 6 at Nos. 6-7).[10] In his conclusions of law, the CHE
determined that the ISD had met its burden to prove these one and a half charges by a
preponderance of the evidence, and that "[b]y making comments which were not positive about
the board to the television and print media, [Plaintiff] failed to maintain a positive and
professional relationship with [Plaintiff's] board of trustees which is in direct violation of the
ISD board policy BJA (Local), failed to perform his duties as a person of ordinary prudence
would have done under the same or similar circumstances, and acted inconsistent with the
employee-employer relationship in a manner which was serious enough such that remediation
would not be required." (Dkt. No. 32, Ex. A1 at Conclusions of Law Nos. 3, 4) (citing cases).

The Commissioner adopted the CHE's factual findings and conclusions of law in full and
determined that substantial evidence existed to support the one and a half reasons found by the
CHE to constitute good cause to terminate Plaintiff's employment contract. (Dkt. No. 32, Ex.

---

[10]   The CHE found that Plaintiff did not fail to maintain a positive and professional working
relationship with the Board by failing to articulate Board policy and decisions to "staff," but that
he did fail to do so with respect to the "community." (Dkt. No. 32, Ex. A1 at ¶ 118; Dkt. No. 43,
Ex. 6 at ¶ 7).

A2).   Plaintiff's response challenges this determination by pointing to the CHE's additional factual findings declining to recognize the remaining 25 and a half charges as constituting good cause.   *See* (Dkt. No. 43).   In other words, Plaintiff claims that "[g]iven the overwhelming evidence that the [ISD] was out on a 'witch hunt,' it cannot be said that the finding of only one and [a] half of another violation is in fact substantial evidence."   (Dkt. No. 43).   This, however, is not the standard by which the Court must determine whether substantial evidence exists to support the Commissioner's decision.   As the ISD Defendants note, substantial evidence does not equate to an "arbitrary minimum number of reasons" constituting good cause, or a favorable "ratio of good cause reasons found compared to good cause reasons proposed."   (Dkt. No. 44). Rather, the Court must look to whether Plaintiff's comments to the media constitute "more than a scintilla" of evidence that would allow reasonable minds to come to the same conclusion as the Commissioner.   Considering the highly critical nature of Plaintiff's comments to the media, and therefore to the community, about the Board with whom he worked to govern the ISD, the Court finds that they do.

## 2.   "Procedural Irregularities," Commissioner's Application of § 157.1072(d), and Motion to Strike

Plaintiff's main objection to the Commissioner's decision is that it failed to take into account the "procedural irregularities" that also form the bases for Plaintiff's due process claims. (Dkt. Nos. 43, 48).   The irregularities identified by Plaintiff are:   (1) Campos's alleged disqualification from presiding over the April 5, 2012 meeting at which the Board considered the CHE's recommendation; (2) the ISD's admitted failures to abide by statutory and administrative requirements that it have a certified court reporter present to transcribe what occurred at the April 5, 2012 meeting, submit the transcript as part of the record on appeal, and file the CHE's recommendation with the record within the requisite period of time; and (3) the ISD's failure to

advise Plaintiff in writing of what action the Board took at the April 5, 2012 meeting. *Id.* The Court will address each in turn.

Plaintiff alleges, and attempts to show through evidence attached to his response, that Campos was disqualified from presiding over the meeting because he had moved outside ISD boundaries. (Dkt. No. 43). The evidence consists of: (1) a newspaper article dated June 20, 2012, more than two months after the April 5, 2012 meeting, in which a "school district attorney" is quoted as saying that Campos automatically relinquished his position when he moved; and (2) an item on the Board meeting agenda for June 21, 2012, indicating that the Board would discuss and consider whether to declare a Board position vacant. (Dkt. No. 43, Exs. 4, 7). Neither piece of evidence indicates when Campos's "relinquishment" of, or removal from, his Board position occurred, and in any event, both are subject to the ISD Defendants' Motion to Strike—the article constitutes inadmissible hearsay and neither the article nor the agenda form part of the record that may be considered by this Court in determining Plaintiff's appeal. *See* (Dkt. No. 45); FED. R. EVID. 802; TEX. EDUC. CODE § 21.307(e). Moreover, as explained *supra*, the Texas Constitution allows a Board member who ceases to reside in his district to continue to perform the duties of his office until his successor is duly qualified. *See* TEX. CONST. art. XVI, §§ 14, 17. The record contains no evidence, admissible or otherwise, that a successor was duly qualified to replace Campos at the time of the meeting. Plaintiff's allegations of Campos's disqualification evince no procedural irregularity by the Board that could serve as a basis for reversing the Commissioner's decision.

The ISD's admitted failures to transcribe what occurred at the April 5, 2012 meeting (and therefore to submit the transcript on appeal), and to timely file the CHE's recommendation with the record, were considered by the Commissioner on appeal. (Dkt. No. 32, Ex. A2). In resolving

Plaintiff's challenge to these failures, the Commissioner noted the Administrative Code provision that "[a]ll allegations which require the record for resolution will be deemed against the school district, if the school district fails to timely file the record of the proceedings." *Id.* at p. 3; 19 TEX. ADMIN. CODE § 157.1072(d).  The Commissioner relied on a prior administrative decision providing that if part of the local record is timely filed, that record may be supplemented if the teacher has a fair opportunity to make his case and the Commissioner has a reasonable amount of time to decide the case, and reasoned that the ISD's filing of the CHE's recommendation four days late met this standard.  (Dkt. No. 32, Ex. A2 at p. 2).  The Commissioner further observed that a Board meeting to consider a CHE's recommendation is not an evidentiary hearing, and therefore a transcript could impact an exhaustion or procedural irregularity claim but "will rarely impact a substantial evidence claim." *Id.* at p. 3.  The Commissioner determined that the case before him did not concern an exhaustion or procedural irregularity claim, and therefore "the failure to file a transcript, while not condoned, has no substantive impact on this case." *Id.*  Among the Commissioner's conclusions of law are that the transcript "is not needed to decide…any issues presented in this appeal," and therefore "no facts are deemed" under § 157.1072(d).

Plaintiff complains that the mandatory nature of the statutory and administrative requirements that the ISD transcribe the Board's meeting, file the transcript with the record, and file the entire record within a specified period of time, render the Commissioner's "waiver" of these requirements erroneous.  (Dkt. Nos. 43, 48); *see* TEX. EDUC. CODE §§ 21.260, 21.301; 19 TEX. ADMIN. CODE § 157.1072(e)(6)-(8).  What Plaintiff would call "waiver" is actually the Commissioner's application of § 157.1072(d), which sets forth the consequences for an ISD's failure to follow the cited requirements: all allegations which *require* the absent record for

resolution will be deemed against the ISD.  The Court finds that even in the absence of the items untimely filed, the Commissioner had before him additional evidence which included the transcript of the three-day evidentiary hearing before the CHE, and therefore evidence of Plaintiff's comments to the media that support the good cause determination in the present case. *See* 19 TEX. ADMIN. CODE § 157.1072(e)(1).  Therefore, this case is distinguishable from *Moses v. Fort Worth Indep. Sch. Dist.*, 977 S.W.2d 851, 855 (Tex.App.-Fort Worth 1998, no pet.), cited by Plaintiff, where the court found that substantial evidence did not exist to support the Commissioner's decision because "there was not a complete local record, *and specifically no testimony at all*" to be considered by the Commissioner.  *Id.* at 855 (emphasis added); *see* (Dkt. No. 44).  Plaintiff also complains that the Commissioner overlooked that this case in fact involved a procedural irregularity claim.  (Dkt. Nos. 43, 48).  However, the Court finds no error in the Commissioner's determination that Plaintiff made no procedural irregularity claim for which a transcript of the April 5, 2012 meeting was *necessary*.  The Court concludes that the Commissioner's application of § 157.1072(d) to the case before him was reasonable, and therefore must give it deference.

The final procedural irregularity identified by Plaintiff is no irregularity at all; Plaintiff complains that he was not advised in writing of the Board's decision at the April 5, 2012 meeting, but as explained *supra*, the Education Code requires a written announcement of the Board's decision only if the Board changes or rejects the CHE's recommendation.  *See* TEX. EDUC. CODE § 21.259.  Although Plaintiff attempts to seize upon the lack of "evidence," *i.e.*, a transcript, of the Board's decision, he stops short of alleging that the Board changed or rejected any finding by the CHE.

**D.      Conclusion**

In sum, the Court finds that the Commissioner's good cause determination was supported by substantial evidence and that Plaintiff has identified no erroneous legal conclusion or procedural irregularity that would require reversal of the Commissioner's decision.  Therefore, the Court must affirm that decision and enter summary judgment in the ISD's favor.

## IV.   Commissioner's Partial Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

### A.   Due Process Claim

Plaintiff's first cause of action alleges that the Commissioner deprived him of due process by "ignoring" the statutory and administrative requirements that the ISD transcribe what occurred at the April 5, 2012 meeting and file the full record on appeal, including the transcript, within the requisite period of time.  *See* (Dkt. No. 17 at Count I).  The Commissioner moves to dismiss this cause of action under Rules 12(b)(1) and 12(b)(6), claiming that the Commissioner has quasi-judicial immunity from suit and that the pleaded facts do not state a plausible claim for relief.  (Dkt. No. 34).  Plaintiff's response does not address these arguments, and it is apparent that they are well-taken.  Even assuming that the Commissioner is not immune from suit, Plaintiff's pleaded allegations reveal that he received all the process due under the Constitution: pre-termination notice and a hearing and post-termination administrative and judicial review. *See Loudermill*, 470 U.S. at 547-48.  Therefore, the Court will grant the Commissioner's Partial Motion to Dismiss Plaintiff's due process claim.

### B.   Appeal of Commissioner's Decision

The Commissioner is also a necessary party to Plaintiff's appeal of the Commissioner's decision, as set forth in Plaintiff's final cause of action.  *See* (Dkt. No. 17 at Count VII); TEX. EDUC. CODE § 21.307(c).   The Commissioner moves for summary judgment in its favor on this claim for the same reasons set forth by the ISD Defendants, *see* (Dkt. No. 34), and therefore for

the same reasons articulated *supra*, the Court finds that the decision must be affirmed and summary judgment granted in the Commissioner's favor.

**V.      Conclusion**

For the foregoing reasons, the Court hereby **ORDERS**:

All Defendants' Partial Motions to Dismiss and Partial Motions for Summary Judgment (Dkt. Nos. 31, 32, 34) are **GRANTED** and the Decision of the Commissioner dated June 14, 2012 is **AFFIRMED**; and

The ISD Defendants' Motion to Strike (Dkt. No. 45) is **GRANTED**.


SO ORDERED this 7th day of November, 2013, at McAllen, Texas.

Randy Crane
United States District Judge